# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| DWAYNE WALTERS, | CIVIL ACTION |
| Plaintiff | |
| VERSUS | NO. 18-5811 |
| SOCIAL SECURITY ADMINISTRATION, | SECTION: "E" |
| Defendant | |

## ORDER AND REASONS

Before the Court is a Report and Recommendation issued by Magistrate Judge Janis van Meerveld.[1] On October 31, 2018, Plaintiff filed a motion for summary judgment.[2] On December 26, 2018, Defendant Andrew Saul, Acting Commissioner of the Social Security Administration ("the Commissioner") filed a cross motion for summary judgment.[3] For the reasons that follow, the Court **ADOPTS** the Report and Recommendation as its own and hereby **DENIES** the motion for summary judgment filed by Plaintiff and **GRANTS** the motion for summary judgment filed by Defendant.

## BACKGROUND

Plaintiff Dwayne Walters seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. § 423.[4] Plaintiff applied for DIB on January 29, 2015, asserting a disability onset date of October 28, 2014.[5] He alleged the

---

[1] R. Doc. 22. This Order refers to documents on this Court's CM/ECF docket as "R. Doc. [#]" and refers to the administrative record as "Tr. [#]." The administrative record is located on the CM/ECF docket as Document 13.
[2] R. Doc. 17.
[3] R. Doc. 18.
[4] R. Doc. 1.
[5] Tr. 205, 242.

1

following illnesses, injuries, or conditions: lumbar degenerative disc disease and gum disease.[6] On February 3, 2016, Plaintiff's claim was denied by the state agency. The Disability Determination Explanations concluded:

> The medical evidence shows that although you experience back and right knee discomfort, you are still able to move about and you can use your arms, hands, and legs in a satisfactory manner. Although you have stated that you have gum disease, with the available information we cannot determine a disabling impairment. Though you stated you are depressed at times, your records do now show any treatment for this condition. The medical evidence does not show any other disabling condition that would prevent you from working.[7]

Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 13, 2017.[8] The ALJ found Plaintiff was not under a disability, as defined in the Act, from the alleged disability onset date of October 28, 2014, through June 7, 2017, the date of the ALJ's decision.[9] Plaintiff appealed to the Appeals Council, which denied review on April 26, 2018.[10]

On June 11, 2018, Plaintiff filed the instant complaint in this Court to review the Commissioner's decision.[11] The Commissioner answered and filed the administrative record.[12] The parties filed cross-motions for summary judgment.[13] On July 19, 2019, the Magistrate Judge issued her Report and Recommendation.[14] Plaintiff filed an objection to the Report and Recommendation,[15] and Defendant filed a response to Plaintiff's objection.[16]

---

[6] *Id.*
[7] *Id.* at 77.
[8] *Id.* at 33-62.
[9] *Id.* at 19.
[10] *Id.* at 1-6.
[11] R. Doc. 1.
[12] R. Docs. 12, 13.
[13] R. Docs. 17, 18.
[14] R. Doc. 22.
[15] R. Doc. 23.
[16] R. Doc. 24.

## LEGAL STANDARD

In reviewing the Magistrate Judge's Report and Recommendations, the Court must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected.[17] The Court needs only to review the portions of the report to which there are no objections to determine whether they are clearly erroneous or contrary to law.[18]

The Court's function on judicial review of the final decision of the Commissioner is limited to determining whether the Commissioner's decision is supported by "substantial evidence" and whether the Commissioner applied the correct legal standard to evaluate the evidence.[19] Substantial evidence is more than "a mere scintilla," but less than a preponderance.[20] This Court may not re-weigh the evidence, try the issues de novo, or substitute its judgment for the Commissioner's.[21] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[22]

## LAW AND ANALYSIS

To be considered disabled under the Act, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[17] *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which an objection is made.").
[18] *Id.*
[19] *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007).
[20] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).
[21] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[22] *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992).

3

months."[23] The Commissioner engages in a five-step sequential evaluation process to determine whether an individual qualifies as disabled.[24] The five steps include:

> (1) the claimant is currently working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from performing any other work.[25]

At each step, if the Commissioner determines an individual is or is not disabled (depending on the step), her decision is made on that basis and there is no need to proceed to the next step.[26] The claimant bears the burden of proof on the first four steps.[27] At the fifth step, the Commissioner must "show that the claimant can perform other substantial work in the national economy."[28] Once the Commissioner has made this showing, the claimant bears the burden to rebut the finding.[29] An assessment of the claimant's residual functional capacity ("RFC") is used in steps four and five to determine the claimant's ability to perform his past work or any other type of work.[30]

In this case, the ALJ found Plaintiff is unable to perform any past relevant work,[31] and accordingly the issue is the ALJ's determination Plaintiff can perform other work.[32] The ALJ found Plaintiff has the RFC to perform a reduced range of light work as defined in 20 C.F.R. § 404.1567(b).[33] Specifically, the ALJ found Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk a total of four hours in

---

[23] 42 U.S.C. § 423(d)(1)(A).
[24] 20 C.F.R. § 404.1520(a)(4).
[25] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).
[26] *Id.*
[27] *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).
[28] *Perez*, 415 F.3d at 461.
[29] *Id.*
[30] *Id.*
[31] Tr. 17.
[32] *Id.*
[33] *Id.* at 13-14.

an eight-hour work day; sit a total of six hours in an eight-hour work day; occasionally push and/or pull with the right lower extremity and frequently push and/or pull with the left lower extremity; never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs, balance, and stoop; and occasionally kneel and crouch; and must avoid exposure to moving machinery and unprotected heights.[34]

For the sake of clarity, the Court briefly summarizes the physicians' opinions considered by the ALJ in finding Plaintiff has the RFC to perform a reduced range of light work.[35] The ALJ considered the opinions of four physicians who examined Plaintiff (collectively, the "examining" physicians) and one physician who did not examine Plaintiff.

### *(1) Dr. Oberlander*

Dr. Oberlander is Plaintiff's neurosurgeon who performed Plaintiff's lumbar degenerative disc disease fusion surgery on October 30, 2014. Plaintiff visited Dr. Oberlander shortly after his surgery but has not visited Dr. Oberlander since early 2015. In January 2015, Dr. Oberlander reported Plaintiff was unable to return to his previous job with his post-surgical restrictions. He noted in March 2015 that Plaintiff "appears to be solidly fused after his surgery"[36] but also noted it would take a year for Plaintiff to heal from the fusion procedure and return to work.[37] The ALJ explained he gave "some weight to Dr. Oberlander's opinions," as Dr. Oberlander had the opportunity to examine Plaintiff and his opinions are consistent with the "totality of the record," which shows Plaintiff has

---

[34] *Id.*
[35] The Court notes the ALJ considered all of the objective and opinion evidence, including: Plaintiff's testimony; medical records, including x-rays and surgical history; the clinical notes and opinions of the physicians; and the testimony of the vocational expert.
[36] Tr. 335.
[37] *Id.*

an extensive surgical history and supports a finding he is unable to work at the medium to heavy exertional levels.[38]

### (2) Lallie Kemp Medical Center

Plaintiff went to Lallie Kemp for follow-up primary care visits in 2015 and 2016 and was examined by Dr. Tashawn Lavette Mustiful.[39] Dr. Mustiful noted during all three visits that Plaintiff exhibited "overall normal findings on physical examinations, including a stable gait, intact muscle tone and strength in all extremities, intact hand grip, no ataxia, normal deep tendon reflexes, no tenderness to palpation along spine, no neck stiffness or photophobia, no cervical step off, and healed midline lumbar surgical scar."[40]

### (3) Dr. Zerangue

Dr. Zerangue is Plaintiff's primary care physician. Plaintiff had follow-up appointments with Dr. Zerangue. In December 2015, Plaintiff exhibited, among other things, an "antalgic gait" but "reported he was gradually improving."[41] Despite this, in December 2015 Dr. Zerangue indicated Plaintiff was "100% disabled."[42] In March 2016, Dr. Zerangue noted Plaintiff reported severe lower back pain and neck pain.[43] Later in March 2016, Dr. Zerangue filled out a form with questions about Plaintiff's impairments and stated Plaintiff's pain and symptoms interfered with attention and concentration but Plaintiff was capable of low stress work.[44] The ALJ found Dr. Zerangue's opinion regarding Plaintiff's inability to work was "not supported by the totality of the evidence of record and are given little weight." The ALJ explained: Dr. Zerangue is a "primary care

---

[38] *Id.* at 15.
[39] *Id.* at 396-426.
[40] *Id.*
[41] *Id.* at 15.
[42] *Id.*
[43] *Id.* at 431.
[44] *Id.* at 16.

physician, with no particular expertise"; "his findings are sparse . . . and contain little to no objective findings"; and his findings are "not entirely supported by the other evidence in the record, including the fairly benign findings on physical examinations by the claimant's neurosurgeon, the consultative examination, and more recently at Lallie Kemp hospital."[45]

### *(4) Dr. Loupe*

Dr. Loupe is a consultative examiner who assessed Plaintiff's condition in October 2015. On examination, Plaintiff exhibited "full range of motion in his cervical and lumbar spines, shoulders, elbows, wrists, hips, and ankles"; he "could get down to almost his ankles"; and he "was able to lift his right leg with the left on the floor" and the left with the right on the floor.[46] Although he exhibited "severe pain" on the medial aspect of the joint of his right knee with compression in that area and "difficulty with heel and toe walk," he exhibited "negative straight leg raise test for sciatic pain, no sensory loss in his lower extremities."[47] Dr. Loupe indicated that Plaintiff required a re-fusion of his lumbar spine and was disabled from work.[48] The ALJ stated he gave "little weight to Dr. Loupe's opinion" because "while Dr. Loupe had the opportunity to examine the claimant . . . his examination was performed in 2015 and his opinion is without substantial support from the fairly normal findings of his physical examination of the claimant or any other physical examinations performed since then."[49]

---

[45] *Id.*
[46] *Id.* at 15.
[47] *Id.* at 15-16.
[48] *Id.*
[49] *Id.* at 16.

### (5) Dr. Calkins

Dr. Calkins is a state agency medical consultant who opined Plaintiff is capable of light work. The ALJ stated he "afford[ed] significant weight to the state agency medical consultant."[50] The ALJ explained that although Dr. Calkins is a non-treating, non-examining medical source, "his opinion is based upon a thorough review of the available medical record"; "the opinion is internally consistent and well supported by a reasonable explanation and the available evidence"; and "the opinion is generally consistent with the claimant's treatment records, including the fairly benign findings on physical examinations since his surgery and the no more than mild to moderate findings on diagnostic testing of the claimant's lumbar spine and extremities."[51]

Plaintiff argues "the ALJ's RFC is based only on the findings from the non examining State Agency consultant ([Tr.] 13-14) and ignores the finding from the examining physicians: Dr. Loupe, Dr. Oberlander and Dr. Zerangue, [and] therefore is not supported by substantial evidence."[52] He argues the opinion of the state agency consultant should not outweigh the opinion of the treating physician and examining sources.[53] The Commissioner argues substantial evidence supports the ALJ's RFC determination.[54] Specifically, the Commissioner argues the ALJ recited objective medical findings to support the RFC, and, contrary to Plaintiff's suggestion, the ALJ did not "pick[] and choos[e]" evidence in the record, but instead resolved conflicts in the evidence as the ALJ is expressly tasked to do.[55] The Commissioner further argues "Plaintiff's ability

---

[50] *Id.* at 17.
[51] *Id.*
[52] R. Doc. 17-2 at 13.
[53] *Id.*
[54] R. Doc. 18-1 at 4.
[55] *Id.* at 5-6.

8

to maintain daily activities and the physical examinations that show normal findings support the ALJ's decision to discount Dr. Zerangue's opinion."[56] Finally, the Commissioner argues, even if there is "no medical opinion directly supporting the ALJ's RFC, this does not require reversal as Plaintiff demands."[57]

Plaintiff additionally argues the ALJ erred because "a claimant with a strong work history is generally entitled to enhanced credibility when claiming an inability to work" and, as a result, Plaintiff's past work history compels a finding that his testimony about his pain and functional limitations is credible.[58] The Commissioner argues "the regulations do not state that a certain number of years of continuous work 'enhances' a claimant's credibility or the reliability of a claimant's reported symptoms."[59]

In response to the Magistrate Judge's order requiring supplemental briefing on whether the ALJ was required to address the criteria set forth in 20 C.F.R. § 404.1527(c),[60] Plaintiff filed a supplemental memorandum wherein he maintains the ALJ's finding is not supported by substantial evidence, but also argues the "ALJ's RFC Assessment is contrary to relevant legal standards" because the ALJ "failed to apply the §§ 404.1527(c) . . . factors to the [medical consultant's] opinions."[61] The Commissioner argues the regulations do not require the ALJ to perform a detailed analysis of the factors before declining to grant a physician's opinion controlling weight.[62]

---

[56] *Id.* at 8.
[57] *Id.* (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). In *Ripley*, the Fifth Circuit explained: "[u]sually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. The absence of such a statement, however, does not, in itself, make the record incomplete. In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557 (internal citations omitted).
[58] R. Doc. 17-2 at 17.
[59] R. Doc. 18-1 at 8.
[60] R. Doc. 19.
[61] R. Doc. 21 at 6.
[62] R. Doc. 20 at 1.

Because Plaintiff argues the ALJ's assignment of less weight to the treating physician's opinion means both (1) substantial evidence does not support the ALJ's RFC finding and (2) the ALJ did not properly apply the correct legal standard, the Court analyzes each argument separately. Finally, the Court will turn to Plaintiff's argument that the ALJ applied the legal standard incorrectly when he failed to assign enhanced credibility to Plaintiff's testimony.

### A. Substantial Evidence

As stated above, "substantial evidence" is "'such relevant evidence as a reasonable mind might accept to support a conclusion'"[63]; it is "'more than a mere scintilla and less than a preponderance.'"[64] The Court does "not reweigh the evidence" on review.[65] In fact, the Court cannot reweigh the evidence on review "even if the evidence weighs against the Commissioner's decision."[66] "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[67] "'Conflicts in the evidence are for the [ALJ] and not the courts to resolve.'"[68] "If the [ALJ's] findings are supported by substantial evidence, they must be affirmed."[69]

This is not a case in which there is a complete lack of medical evidence supporting the ALJ's finding. Instead, the ALJ's finding is supported by the findings of various physical examinations and various medical opinions. As the Magistrate Judge found: "The ALJ considered all of the objective and opinion evidence, including Mr. Walters'

---

[63] *Ripley*, 67 F.3d at 555 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).
[64] *Id.* (quoting *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)).
[65] *Id.* (citing *Spellman*, 1 F.3d at 360; *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989)).
[66] *Newton*, 209 F.3d at 452.
[67] *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).
[68] *Jones v. Colvin*, 638 F. App'x 300, 302 (5th Cir. 2016) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.")).
[69] *Newton*, 209 F.3d at 452.

testimony. Considering the treatment records, surgical history, and overall benign objective findings on physical examinations since the surgery despite continued reports of pain, the ALJ assigned the RFC discussed[.]"[70]

The Court acknowledges the medical records present inconsistent opinions concerning observations of Plaintiff's condition. As the Magistrate Judge summarized:

> The ALJ recognized that Dr. Calkins was a non-treating, non-examining medical source, but noted that Dr. Calkins' opinion was based upon a thorough review of the available medical record and a comprehensive understanding of agency rules and regulations. The ALJ also found Dr. Calkins' opinion to be internally consistent and supported by a reasonable explanation. Further, the ALJ found Dr. Calkins' opinion was consistent with Mr. Walters' treatment records, including the fairly benign findings on physical examination since his surgery and the no more than mild to moderate findings on diagnostic testing of Mr. Walters' lumbar spine and extremities. And indeed, Mr. Walters' December 2014 lumbar x-ray showed mild to moderate degenerative disc disease. His April 2015 shoulder x-rays showed osteoarthritis and his April 2015 hip x-rays showed no suspicious hip abnormalities. There are no other post-surgery x-rays or MRIs in the record. Further, when Mr. Walters presented to the Lallie Kemp clinic in November 2015, February 2016, and July 2016, he had a stable gait and muscle tone and strength in the bilateral upper and lower extremities was intact. When he presented at Lallie Kemp in October 2015, a past medical history of chronic back pain was noted, but he did not complain of back pain and complained of right knee pain for three months that was mildly relieved by a Norco regimen. He was found to have normal range of motion. On the other hand, when Mr. Walters visited Dr. Zerangue in April 2015, June 2015, September 2015, December 2015, March 2016, June 2016, and September 2016, his gait was reported to be slow and stiff or antalgic. But there is no indication in Dr. Zerangue's medical records that any testing of Mr. Walters' range of motion or strength was ever performed.[71]

Conflicts in the evidence are for the ALJ to resolve,[72] and the Court is prohibited from reweighing the evidence on review.[73] The ALJ here resolved the conflicts by giving little to no weight to Dr. Zerangue's opinion. However, the Court cannot say the ALJ's decision to do so rendered his decision unsupported by substantial evidence. As the

---

[70] R. Doc. 22 at 24.
[71] R. Doc. 22 at 25.
[72] *Jones*, 638 F. App'x at 302.
[73] *Ripley*, 67 F.3d at 555.

Magistrate Judge stated, "[t]he ALJ considered all of the objective and opinion evidence, including Mr. Walters' testimony. Considering the treatment records, surgical history, and overall benign objective findings on physical examinations since the surgery despite continued reports of pain, the ALJ assigned the RFC discussed above."[74] The "overall benign objective findings on physical examinations" include the findings of Dr. Mustiful, who examined Plaintiff three times in 2015-2016. Accordingly, given the high level of deference owed to the ALJ's findings on review, the Court's finds the ALJ's RFC is supported by substantial evidence.

### B. Legal Standard

The Court turns to whether the ALJ applied the proper legal standards. The first legal standard Plaintiff appears to argue was applied incorrectly concerns the weight given to the non-examining consultant's opinion, which was greater than the weight given to the opinions of the two treating physicians and the examining consultant. "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'"[75] "Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.'"[76] "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[77] "The treating physician's opinions are not

---

[74] R. Doc. 22 at 24.
[75] *Newton*, 209 F.3d at 455 (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)).
[76] *Id.* (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).
[77] *Id.* (internal brackets, quotations marks, and citation omitted).

12

conclusive."[78] "[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony."[79] Good cause exceptions "include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."[80]

The Fifth Circuit has held that prior to declining to give a treating physician's opinion controlling weight and "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)]."[81] Those factors include: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.[82]

The crux of the parties' dispute is whether an ALJ is *always* required to perform a detailed analysis of the § 404.1527(c) factors prior to declining to give a treating physician's opinion controlling weight. It is undisputed the ALJ in this case did not perform a detailed analysis of the six factors. Plaintiff argues an ALJ is always required to weigh the six § 404.1527(c) factors before giving less than substantial weight to a treating

---

[78] *Id.* (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995)).
[79] *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)).
[80] *Id.* (quoting Greenspan, 38 F.3d at 237).
[81] *Newton*, 209 F.3d at 453.
[82] *Id.* at 456.

physician's opinion.[83] Defendant argues a detailed analysis of the factors "is not required where there is 'reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist'" or "where the ALJ has more than one medical opinion before him or her."[84]

The Fifth Circuit has held in several decisions "that ALJs are not required to consider the § 404.1527(c) factors before dismissing a treating physician's opinion" if there is "competing first-hand medical evidence contradicting that opinion"[85] or if there are competing medical opinions "of other physicians who have treated or examined the claimant."[86] For instance, in *Zimmerman v. Astrue*, the Fifth Circuit rejected the claimant's argument that the ALJ improperly disregarded his treating physician's opinion without considering the six factors where the treating physician's testimony was contradicted by "competing first-hand medical evidence."[87] "That evidence . . . included [a different examining physician's] examination of [the plaintiff] that revealed full motor strength, MRIs indicating only mild problems, records indicating that pain medication was effective, and [the plaintiff's] own testimony about his everyday activities."[88] Similarly, in *Qualls v. Astrue*, the Fifth Circuit held the ALJ did not err in declining to give the treating physician's opinion controlling weight without performing the §

---

[83] R. Doc. 23-1 at 3-4.
[84] R. Doc. 20 at 2 (quoting *Carlton v. Berryhill*, Civil Action No. 16-17599, 2018 WL 550636, at *15 (E.D. La. Jan. 2, 2018) (Report and Recommendation), *adopted by* 2018 WL 521080 (E.D. La. Jan. 22, 2018)).
[85] *Jones*, 638 F. App'x at 304 (citing *Newton*, 209 F.3d at 458 ("This is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another. Nor is this a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion."); *Hamilton-Provost v.* Colvin, 605 F. App'x 233, 240 (5th Cir. 2015); *Qualls v. Astrue*, 339 F. App'x 461, 466–67 (5th Cir. 2009); *Zimmerman v. Astrue*, 288 F. App'x 931, 935 (5th Cir. 2008)).
[86] *Zimmerman*, 288 F. App'x at 935.
[87] *Id.*
[88] *Id.* at 935–36.

404.1527(c) factors analysis when the treating physician's opinion was "inconsistent with both his own clinical notes and the opinions of the other examining physicians."[89]

In this case, Dr. Zerangue's opinion regarding Plaintiff's ability to work is inconsistent with the first-hand observations of Dr. Mustiful, who examined Plaintiff three times during 2015-2016 at the Lallie Kemp Medical Center and each time reported fairly benign findings on physical examinations. As the Magistrate Judge held, Dr. Zerangue's opinion also is inconsistent with the "objective findings of consultative examiner Dr. Loupe,"[90] who, upon examination, found Plaintiff had full range of motion in his lumbar spine, could get almost down to his ankles, had a negative Trendelenburg test, and was able to lift his right leg with the left foot on the ground and vice versa.[91] Dr. Zerangue's opinion also is "inconsistent" with both his "own clinical notes," wherein he noted Plaintiff's gradual improvements, and x-rays revealing no suspicious hip abnormalities.[92] Further, Plaintiff's own testimony about the daily activities he can perform contradict Dr. Zerangue's opinion.[93] Accordingly, the ALJ was not required to consider the § 404.1527(c) factors before "afford[ing] light weight"[94] to Dr. Zerangue's opinion.

Plaintiff cites several additional cases in his motion for summary judgment and his supplemental memorandum. However, as the Magistrate Judge explained, the cases cited by Plaintiff are "distinguishable" from the instant case for the following reasons.[95] In

---

[89] 339 F. App'x at 466.
[90] R. Doc. 22 at 27.
[91] Tr. 378-79.
[92] Although it does not constitute first-hand medical evidence, the Court finds it informative that Dr. Zerangue's opinion is also inconsistent with the opinion of Dr. Calkins, who examined the entirety of the medical record and found Plaintiff capable of light work.
[93] *See* Tr. 46-53.
[94] *Id.* 16.
[95] R. Doc. 22 at 29.

*Newton*, the ALJ was reversed for rejecting the findings of a treating specialist based on the testimony of a non-examining medical expert with no expertise whose opinion was not based on the full medical record.[96] In this case, "the opinion of Dr. Calkins relied on by the ALJ was based on a review of the entire 2014- 2016 medical record including the opinion and records of Dr. Zerangue."[97] In *Hudson*, the ALJ was reversed for relying on the opinion of an individual who was not a medical doctor.[98] In this case, Dr. Calkins had expertise and "Dr. Calkins is a medical doctor."[99] In *Warncke*, the Fifth Circuit found the opinion of the reviewing physician was not inconsistent with the opinion of the treating physician because the treating physician's opinion was made prior to the claimant receiving a percutaneous stimulator, which the claimant testified eased his pain.[100] The Fifth Circuit explained: "[i]n situations like this one, when other evidence in the record supports a conclusion contrary to the opinion of an examining physician, the Secretary's regulations allow the ALJ to reject the opinion of the examining physician."[101] In this case, "[l]ike *Warncke*, medical evidence and testimony in the record here supports a conclusion contrary to the opinion of Dr. Zerangue."[102]

The ALJ was not required to perform a detailed analysis of the § 404.1527(c) factors before giving Dr. Zerangue's opinion less or no weight.[103] Although Plaintiff's arguments and objections focus on the ALJ's assignment of less weight to Dr. Zerangue, his treating physician, the Court agrees with the Magistrate Judge that the ALJ's

---

[96] 209 F.3d at 457.
[97] R. Doc. 22 at 29.
[98] *Hudson v. Apfel*, No. 3:99-CV-946-AH, 2000 WL 547121, at *3 (N.D. Tex. May 3, 2000).
[99] R. Doc. 22 at 29.
[100] 619 F.2d 412, 416 (5th Cir. 1980).
[101] *Id.* at 417.
[102] R. Doc. 22 at 29.
[103] *See Jones*, 638 F. App'x at 304.

consideration of the opinions of Dr. Loupe and Dr. Oberlander also was appropriate. With respect to Dr. Loupe, the ALJ found Dr. Loupe's opinion that Plaintiff has "20% impairment to the body as a whole and 10% impairment to the right knee and is disabled from work" was not supported by the fairly normal findings in Dr. Loupe's own physical examination or by the findings of more recent physical examinations conducted by Dr. Mustiful. With respect to Dr. Oberlander, the ALJ gave "some weight" to Dr. Oberlander's opinion that Plaintiff could not return to his past work because the ALJ found the record supported a finding that Plaintiff could not return to his truck driving work.[104]

The Court now turns to Plaintiff's argument that his past work history compels a finding that his testimony about his pain and functional limitations is credible. The Court agrees with the Magistrate Judge that "Mr. Walters has not pointed to a case within this circuit imposing such a rule."[105] To the contrary, at least one district court in this circuit has held a claimant's work history is one factor to consider but does not, on its own, warrant a finding of substantial credibility.[106] In this case, although Plaintiff has a consistent past work history, this alone does not mean that his testimony must be accepted at face value when the medical evidence substantially supports a contrary conclusion.

The Court, having considered the record, the applicable law, relevant filings, and the Magistrate Judge's Report and Recommendation finds the Magistrate Judge's findings of fact

---

[104] Dr. Oberlander's opinion in March 2015 that Plaintiff should remain out of work is reasonably interpreted as referring to the kind of work Plaintiff had been performing. An opinion that a person is completely unable to work is a finding of disability. Such opinions are not entitled to any special weight because disability is a determination for the Commissioner to make. *See* 20 C.F.R. § 404.1527(d).
[105] R. Doc. 22 at 29.
[106] *Carroll v. Colvin*, Civil Action 15-687-JWD-RLB, 2016 WL 7757275, at *12 (M.D. La. Dec. 29, 2016).

and conclusions of law are correct and hereby approves the United States Magistrate Judge's Report and Recommendation and **ADOPTS** it as its opinion in this matter.[107]

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion for summary judgment[108] is **DENIED** and Defendant's motion for summary judgment[109] is **GRANTED**.

**New Orleans, Louisiana, this 20th day of August, 2019.**

*Susie Morgan*
          **SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[107] R. Doc. 22.
[108] R. Doc. 17.
[109] R. Doc. 18.